# Third District Court of Appeal
## State of Florida

Opinion filed June 2, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-89
Lower Tribunal No. 16-28945

_____

**Zeev Segal, etc.,**
Appellant,

vs.

**Forastero, Inc., etc.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Mavel Ruiz, Judge.

Bradley E. Lolus, P.A., and Bradley E. Lolus (Lauderhill), for appellant.

Reiner & Reiner, P.A., and Samuel B. Reiner, II, for appellee.

Before SCALES, HENDON and LOBREE, JJ.

SCALES, J.

In this supplementary proceeding in aid of execution,[1] the impleaded defendant, Zeev Segal, appeals the trial court's supplementary final summary judgment that pierced the corporate veil of judgment debtor Segal Properties, LLC (the "LLC"). The challenged judgment held Segal personally liable to the judgment creditor, appellee Forastero, Inc., for the $500,000 judgment Forastero had earlier obtained against the LLC. We reverse because the summary judgment evidence does not establish that Forastero is entitled, as a matter of law, to pierce the corporate veil of the LLC.

## I. RELEVANT FACTS AND PROCEDURAL BACKGROUND

### A. The Residential Sales Contract and the Breach of Contract Action

Segal is the sole member and sole owner of the LLC. In June 2016, Segal executed, on behalf of the LLC, as buyer, a purchase contract obligating the LLC to purchase from Forastero a residential property located in Coral Gables for $10,000,000. The contract required the LLC to make a $500,000 initial deposit within three days of execution, and provided that if the LLC failed to make the required deposit, Forastero could sue the LLC for the funds and retain the funds as liquated damages. Segal was neither a party to the agreement, nor a personal guarantor of the LLC's performance of the agreement.

[1] See § 56.29, Fla. Stat. (2018).

2

When the LLC did not make the $500,000 initial deposit, and it became apparent the LLC no longer wished to purchase the subject property, Forastero filed suit against the LLC for breach of contract. On September 2, 2017, the trial court entered final summary judgment against the LLC, awarding Forastero $500,000 in damages, plus statutory interest. This Court affirmed the judgment. See Segal Props., LLC v. Forastero, Inc., 256 So. 3d 192 (Fla. 3d DCA 2018) (table).

*B. The Proceedings Supplementary*

On learning through post-judgment discovery that the LLC had no assets to satisfy the $500,000 judgment, Forastero filed an August 13, 2018 motion to implead Segal as a party defendant in proceedings supplementary.[2] In this August 13, 2018 motion, Forastero sought to pierce the LLC's corporate veil and to hold Segal personally liable for the $500,000 money judgment, claiming that: (i) "third-party discovery produced by the broker in the failed purchase revealed that the proof of funds for the purchase submitted by [the LLC] pledged Mr. Segal's own personal monies/assets;" and (ii) "Mr. Segal's use of an undercapitalized shell company to purchase a

---

[2] Forastero also moved to implead Segal's other entity, Segal Jockey Upland, LLC, as party defendant. Segal Jockey Upland, LLC is neither a party to this appeal, nor subject to the December 15, 2020 supplementary final judgment.

3

multi-million-dollar property constitutes improper conduct such that Mr. Segal can and should be held personally liable for [the LLC's] debt to [Forastero]." Attached to the motion was a February 20, 2018 Fact Information Sheet, prepared and verified by Segal on behalf of the LLC, attesting that the LLC currently had no bank accounts, no assets, no real property, and also no reported income or tax returns for the last three years. Further, the LLC had no employees and had conducted no business nor engaged in any corporate formalities within the prior two years. Also attached to the motion were two letters addressed to "To Whom it May Concern." In the first letter, dated prior to the execution of the real estate sales contract, a Bank Lemui representative stated that Segal had "seven figures in the aggregate" in his depository accounts at the bank. In the second letter, dated after the execution of the real estate sales contract, an accountant stated Segal's personal income for the 2015 tax year.

On October 13, 2018, the trial court granted Forastero's motion to implead Segal and directed Segal to appear and to file an affidavit stating why Segal's funds and assets should not be used to satisfy Forastero's judgment against the LLC. See § 56.29(2), Fla. Stat. (2018). Segal complied and filed both an affidavit and "Legal Defenses of Zeev Segal" in response to the lower court's notice to appear. In his filings, Segal argued that

4

Forastero had intentionally misled the trial court by falsely claiming Segal had somehow pledged his personal assets and funds to facilitate the real estate sales transaction. Asserting also that Forastero did not sufficiently allege that Segal had used the LLC for an improper purpose, Segal argued that the LLC's undercapitalization when he executed the real estate contract was insufficient, by itself, to pierce the LLC's corporate veil and to impose personal liability on him.

After deposing Segal, Forastero moved for summary judgment. In its summary judgment motion, Forastero argued that: (i) the February 20, 2018 Fact Information Sheet and Segal's deposition testimony proved that the LLC was the "mere instrumentality" of Segal; (ii) because the LLC was a "woefully undercapitalized shell company" when Segal executed the real estate sales contract, and Segal had "committed his own funds and assets, as proof of [the LLC's] ability to satisfy its obligations under the real estate purchase contract," Segal had used the LLC for an improper purpose; and (iii) Segal's improper conduct had caused the transaction to fail, injuring Forastero. Segal opposed the LLC's summary judgment motion but did not file a cross-motion for summary judgment.

*C. The Challenged Summary Judgment*

5

On November 16, 2020, the trial court entered an order granting Forastero's summary judgment motion. While this order was unelaborated, both the hearing transcripts and Forastero's summary judgment motion reflect that Forastero relied primarily upon two cases for piercing the LLC's corporate veil: <u>Ocala Breeders' Sales Co. v. Hialeah, Inc.</u>, 735 So. 2d 542 (Fla. 3d DCA 1999), and <u>Sanchez v. Renda Broadcasting Corp.</u>, 127 So. 3d 627 (Fla. 5th DCA 2013). On December 15, 2020, the trial court entered supplementary final summary judgment in favor of Forastero, piercing the LLC's corporate veil, and declaring Segal personally liable for the September 2017 judgment that Forastero had obtained against the LLC. Segal timely appealed this December 15, 2020 supplementary final summary judgment and the November 16, 2020 summary judgment order upon which the judgment was based.

## II.     ANALYSIS[3]

To obtain a summary judgment piercing the LLC's corporate veil, so as to hold Segal personally liable for the September 2017 judgment, Forastero was required to establish the non-existence of any genuine issue of material

---

[3] This Court employs *de novo* review of final orders in proceedings supplementary, <u>see</u> <u>Longo v. Associated Limousine Servs., Inc.</u>, 236 So. 3d 1115, 1118 (Fla. 4th DCA 2018), and also when reviewing orders granting summary judgment. <u>See</u> <u>World Fin. Grp., LLC v. Progressive Select Ins. Co.</u>, 300 So. 3d 1220, 1222 n.4 (Fla. 3d DCA 2020).

fact, and prove that, when Segal executed the real estate contract on behalf of the LLC: (i) Segal dominated and controlled the LLC to such an extent that the LLC had no existence independent of Segal, and the LLC was the mere instrumentality or alter-ego of Segal; (ii) Segal used the LLC's corporate form fraudulently or for an improper purpose; and (iii) Segal's fraudulent or improper use of the LLC's corporate form caused injury to Forastero. See BEO Mgmt. Corp. v. Horta, 45 Fla. L. Weekly D2576, 2020 WL 6751313 at *2 (Fla. 3d DCA Nov. 18, 2020); WH Smith, PLC v. Benages & Assocs., Inc., 51 So. 3d 577, 581 (Fla. 3d DCA 2010); Gasparini v. Pordomingo, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008). We conclude that the summary judgment evidence fails to establish, as a matter of law, each of these factors.

*A. Factor One: Domination and Control*

First, we conclude that the summary judgment evidence fails to establish, as a matter of law, that the LLC was Segal's "mere instrumentality," that is, that the LLC had no existence independent from Segal. In fact, much of the summary judgment evidence suggests that the LLC had conducted significant business undertakings. Segal testified at his deposition that: Segal formed the LLC in 2011; in 2012, the LLC purchased and managed a rental property; the LLC generated revenue from the rental property and filed yearly tax returns; the LLC had a bank account for several years until the

7

bank closed; and the LLC had no employees, assets, or business when the subject real estate contract was executed because the LLC had sold the rental property.

These important facts distinguish this case from Ocala Breeders' Sales Co. and Sanchez, two cases heavily relied upon by Forastero. In Ocala Breeders' Sales Co., a case where the facts were not in dispute, we concluded a subsidiary was a "mere instrumentality" of its parent company because the wholly owned subsidiary *never* had employees, was *never* capitalized, *never* had a checking account, and *never* had any existence separate from its corporate parent. 735 So. 2d at 543. In fact, all payments made to the subsidiary were deposited directly into the parent company's bank account and all expenses of the subsidiary were paid directly by the parent company. Id.

Similarly, Forastero's reliance on Sanchez is misplaced. First, the procedural posture of Sanchez is markedly different from the instant case; the Sanchez court merely determined the creditor had adequately alleged sufficient facts to warrant proceedings supplementary to go forward. 127 So. 3d at 629. Even so, unlike in this case, the Sanchez creditor alleged the subsidiary corporation *never* had a bank account or any assets, had *never*

8

filed tax returns, had *never* conducted any business, and the sole shareholder conceded that the subsidiary had "no purpose." Id. at 628.

Hence, both Ocala Breeders' Sales Co. and Sanchez are distinguishable from this case. We note that "[a] mere instrumentality finding is rare," Federated Title Insurers, Inc. v. Ward, 538 So. 2d 890, 891 (Fla. 4th DCA 1989), and to be entitled to summary judgment on this element is exceedingly difficult. Because the record evidence reveals a genuine issue of material fact as to whether the LLC was a "mere instrumentality" of Segal, Forastero failed to meet its summary judgment burden on this element.

*B. Factor Two: Improper Purpose*[4]

We similarly conclude that the summary judgment evidence fails to establish, as a matter of law, that Segal used the LLC's corporate form for an improper purpose when he executed the real estate contract on behalf of the LLC.[5] To support its allegation that Segal used the LLC for an improper purpose, Forastero makes two assertions: (i) that Segal somehow pledged

---

[4] While we could end our analysis based upon our holding regarding factor one, to provide guidance to the parties on remand, we evaluate the summary judgment evidence proffered for both the second and third prongs.

[5] Because Forastero's August 13, 2018 motion to implead Segal alleged only that Segal used the LLC's corporate form for an improper purpose, and did not assert that Segal used the LLC fraudulently, we limit our analysis of this prong to whether Segal's use of the LLC was improper.

9

his personal assets or monies to cover the LLC's contractual obligations; and (ii) that the LLC was undercapitalized. The summary judgment record, though, establishes neither assertion.

1. Pledge of personal assets

Forastero suggests that Segal's verified February 20, 2018 Fact Information Sheet and Segal's deposition testimony – which demonstrated that, when he executed the real estate contract on behalf of the LLC, Segal had substantial *personal* resources – somehow transformed Segal into a personal guarantor of the LLC's contractual obligations. Contrary to Forastero's allegations, however, this evidence did not suggest, much less establish, that Segal pledged his own personal assets or monies to cover the LLC's contractual obligations. Indeed, the statute of frauds requires that "any special promise to answer for the debt, default or miscarriage of another person . . . or upon any contract for the sale of lands . . . shall be in writing and signed by the party to be charged therewith . . . ." § 725.01, Fla. Stat. (2016). It is undisputed that no such writing exists, that the only parties to the real estate contract were Forastero and the LLC, and that Segal did not personally guaranty the transaction.

Also, there is no assertion that Segal somehow used the two "To Whom it May Concern" letters to coax Forastero into signing the contract

10

with the LLC[6] or to misrepresent the assets of the LLC. See Riley v. Fatt, 47 So. 2d 769, 773 (Fla. 1950) ("There is no indication in the record that the corporation was organized as a subterfuge or for the purpose of enabling its members to escape, avoid or evade personal responsibility other than in a proper and legal manner. Every indication is that throughout the course of the transaction from which the law suit and judgment arose [the judgment creditor] considered that he was dealing with . . . a corporate entity and that he treated it as such even up to the time of filing his affidavit in this supplementary proceeding.") (citations omitted). Further, there is no suggestion that anything contained in the two letters inaccurately reflected the financial condition of Segal.

In sum, the summary judgment record simply does not support the assertion that there was a promise – explicit or implicit – by Segal to pay the LLC's contractual obligations, and we fail to see how Forastero's assertion in this regard implicates, much less establishes, the "improper purpose" prong.

2. Undercapitalization

---

[6] In fact, even if Forastero had alleged it was fraudulently induced into signing the contract based upon the two letters, the contract's integration clause expressly states that neither party's prior representation can be relied upon unless such representation is contained in the parties' written contract.

Forastero further argues that Segal used the LLC for an improper purpose because the LLC was a "woefully undercapitalized shell company" when the LLC executed the real estate sales contract. While the LLC might have been undercapitalized, we cannot conclude, on this record, that such undercapitalization constituted, as a matter of law, an improper use of the LLC.

Segal testified at his deposition that the LLC previously had a bank account, purchased and managed a rental property, and generated revenue. Importantly, though, Segal testified that, had his visual inspection of the property proved satisfactory, he would have obtained either a bank loan, a "personal loan from people," or "money from . . . private investors" to capitalize the LLC and make the initial deposit; but, "it wasn't worth it." Specifically, Segal testified that the LLC decided not to make the initial deposit because the property was "beat up," "broken down" and "not for him" and that because the LLC "needed to invest a couple of more millions in it . . . he wasn't interested in it."

Again, these facts distinguish this case from both Ocala Breeders' Sales Co., where it was undisputed that the subsidiary corporation "[had] never been capitalized and [would] never be capitalized," 735 So. 2d at 543, and from Sanchez, where, based upon the sole shareholder's deposition, the

12

creditor alleged that the undercapitalized corporation had never conducted business and served "no purpose." 127 So. 3d at 628.

The summary judgment evidence suggests that Segal made a business decision to allow the LLC to default on the contract, rather than to capitalize the LLC to move forward with the transaction. In our view, this evidence creates a fact issue on the second prong, and precludes the trial court's finding that, as a matter of law, Segal used the LLC for an improper purpose. See Geigo Props., L.L.P. v. R.J. Gators Real Estate Grp. Inc., 849 So. 2d 1109, 1110 (Fla. 4th DCA 2003) (concluding that a president's use of an undercapitalized shell corporation to enter into a lease agreement for the operation of a new restaurant and subsequent abandonment of the lease did not constitute improper conduct that would warrant piercing the corporate veil, affirming the trial court's determination that the president "had made a business decision to open the new restaurant at a different location than the lease premises").

*C. Factor Three: Causation*

Finally, and relatedly, we are compelled to reverse the summary judgment because "there is no allegation or evidence that establishes a nexus between [Segal's] operations of [the LLC] and the respective injur[y] to [Forastero]." BEO Mgmt. Corp., 2020 WL 6751313 at *3. It appears from

13

our *de novo* review of the record that an issue of material fact exists as to whether Forastero's injury was caused simply by the LLC's failure to pay the agreed-upon initial deposit, as opposed to any improper use of the LLC by Segal. No doubt Forastero's efforts to collect damages occasioned by the LLC's contract breach would be more successful had Forastero obtained Segal's personal guaranty of the LLC's obligation, but Forastero did not do so. To pierce the corporate veil, the aggrieved creditor must show its injury was caused by the use of the corporation "to mislead creditors or to perpetrate a fraud upon them." Dania Jai-Alai Palace, Inc. v. Sykes, 450 So. 2d 1114, 1120 (Fla. 1984). Piercing the corporate veil is not simply a mechanism to provide a plaintiff in a contract action with an after-the-fact, judicially imposed personal guaranty. We conclude the summary judgment evidence fails to establish, as a matter of law, that Segal's alleged improper use of LLC's corporate form caused injury to Forastero.

## III. CONCLUSION

We conclude, based on our *de novo* review of the summary judgment record, that the trial court erred in determining that, as a matter of law, the evidence submitted below was sufficient to pierce the LLC's corporate veil so that Segal would be personally liable for the September 2017 judgment Forastero obtained against the LLC. We, therefore, reverse the trial court's

14

December 15, 2020 supplementary final summary judgment and the November 16, 2020 summary judgment order and remand for further proceedings.

Reversed and remanded.